IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DOYALINE O. VAUGHN,

    Plaintiff,                            No. CIV S-05-1400 MCE DAD

    vs.

MICHAEL J. ASTRUE,                  FINDINGS AND RECOMMENDATIONS
Commissioner of Social Security,[1]

    Defendant.
_____/

        This social security action was submitted to the court, without oral argument, for ruling on plaintiff's motion for summary judgment and defendant's cross-motion for summary judgment. For the reasons explained below, the undersigned will recommend that the decision of the Commissioner of Social Security (Commissioner) be reversed and that this matter be remanded with the direction to grant benefits.

### PROCEDURAL BACKGROUND

        Plaintiff Doyaline O. Vaughn applied for Social Security Disability benefits under Title XVI of the Social Security Act (the Act) in August 2002. (Transcript (Tr.) at 44-47.) The

---

[1] On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security. Mr. Astrue is substituted as defendant in this suit pursuant to 42 U.S.C. § 405(g) and Fed. R. Civ. P. 25(d)(1).

Commissioner denied plaintiff's application initially on November 20, 2002, and upon reconsideration on April 3, 2003. (Tr. at 33-41.)

Pursuant to plaintiff's request dated May 21, 2003, a hearing was held before an administrative law judge (ALJ) on April 9, 2004, at which time plaintiff was represented by counsel. (Tr. at 42, 277-95.) In a decision issued on August 26, 2004, the ALJ determined that plaintiff was not disabled through the date of the decision. (Tr. at 12-24.) The ALJ entered the following findings:

> 1. The claimant has not engaged in substantial gainful activity since October 1, 2001.
>
> 2. The medical evidence establishes that the claimant has severe mild depressive disorder, COPD, and degenerative disc disease of the lumbar and cervical spine with mild scoliosis/stenosis, but that she does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4.
>
> 3. The claimant's allegations of chronic severe pain and other limitations are found to be not fully credible for the reasons stated above.
>
> 4. The claimant has the following residual functional capacity: the claimant is able to lift up to 50 pounds occasionally, 25 pounds frequently. She is capable of standing, walking and sitting for 6 hours. Pushing and pulling with the upper extremities is unlimited. All postural activities are limited to occasional. She is to avoid concentrated exposure to fumes, odors, dust, gases, etc. The claimant is also limited to jobs which do not require frequent public or peer contact (20 CFR § 416.945).
>
> 5. The claimant is unable to perform her past relevant work as a telemarketer but the claimant is able to perform her past relevant work as a hotel housekeeper.
>
> 6. The claimant is 43-years-old, which is defined as a younger individual (20 CFR § 416.963).
>
> 7. The claimant has a high school education (20 CFR § 416.964).
>
> 8. Based upon the above residual functional capacity and the claimant's age, education, and work experience, section 416.969 of Regulations No. 16 and Rules 203.28, 203.30 of Table No. 3, Appendix 2, Subpart P, and Regulations No. 4 would direct a conclusion of "not disabled."

> 9. The claimant's capacity for full range of medium work has not been compromised by her additional non-exertional limitations. Accordingly, using the above-cited rules as a framework for decision-making, the claimant is not disabled.
>
> 10. The claimant's substance abuse disorder is in remission and is not "material."
>
> 11. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR § 416.920(f)).

(Tr. at 23-24.) On May 5, 2005, the Appeals Council denied plaintiff's request for review of the ALJ's decision. (Tr. at 5-10.) Plaintiff sought judicial review pursuant to 42 U.S.C. § 405(g) by filing the complaint in this action on July 11, 2005.

## LEGAL STANDARD

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record as a whole and the proper legal standards were applied. Schneider v. Comm'r of the Soc. Sec. Admin., 223 F.3d 968, 973 (9th Cir. 2000); Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999). The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. See Miller v. Heckler, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001) (citing Morgan, 169 F.3d at 599); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)).

A reviewing court must consider the record as a whole, weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion. See Jones, 760 F.2d at 995. The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see

Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

In determining whether or not a claimant is disabled, the ALJ should apply the five-step sequential evaluation process established under Title 20 of the Code of Federal Regulations, Sections 404.1520 and 416.920. See Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). This five-step process can be summarized as follows:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Yuckert, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.; Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

## APPLICATION

Plaintiff advances three arguments in her motion for summary judgment. First, she asserts that the ALJ failed to provide clear, convincing, and legitimate reasons for not crediting the opinions of plaintiff's treating physician. Second, plaintiff contends that the ALJ

failed to provide clear and convincing reasons for rejecting plaintiff's statements regarding her impairments and symptoms, including pain.  Third, plaintiff argues that the ALJ erred when he found plaintiff capable of performing her past work as a hotel housekeeper and then determined that she was not disabled by comparing plaintiff's vocational factors to those of the grids.   The court addresses the first two arguments below.

I. Failure to Credit the Opinions of Plaintiff's Treating Physician

It is well-established that the medical opinion of a treating physician is entitled to special weight.  Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989); Embrey v. Bowen, 849 F.2d 418, 421 (9th Cir. 1988).  "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant."  Lester, 81 F.3d at 830.  "At least where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for 'clear and convincing' reasons."  Id. (quoting Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991)).  "Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record for so doing."  Id. (quoting Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983)).

In the present case, Harold Budhram, M.D., began treating plaintiff in 1996 and had been treating her for approximately eight years when he completed a "Lumbar/Cervical Spine Residual Functional Capacity Questionnaire" on April 23, 2004.  (Tr. at 219-33.)  Dr. Budhram (1) listed plaintiff's diagnoses as lumbar stenosis, cervical degenerative disc disease with neural encroachment, and carpal tunnel, (2) cited abnormal CT scans as clinical findings showing plaintiff's medical impairments, (3) identified plaintiff's symptoms as depression, pain, numbness and tingling in the hands and feet, decreased appetite, decreased energy, and perceived weakness in the arms and legs, (4) described plaintiff's neck and low back pain as constant and radiating to all extremities, (5) indicated that housework and riding in an auto were precipitating factors in plaintiff's pain, (6) found reduced neck flexion to 20 degrees and trunk flexion to 45

1  degrees, and (7) noted impaired sleep (tr. at 219-20).  Dr. Budhram found that plaintiff's pain
2  was severe enough to interfere with her attention and concentration often.  (Tr. at 220.)  He noted
3  that plaintiff's medications, specifically her narcotic analgesic and her tranquilizer, cause
4  impairment of focus and concentration, as well as sedation.  (Tr. at 221.)
5              In Dr. Budhram's opinion, plaintiff would experience the following functional
6  limitations in a competitive work situation as a result of her impairments:  inability to walk two
7  city blocks without rest or severe pain; inability to sit more than 20 minutes at a time; inability to
8  stand more than ten minutes at a time; inability to walk more than 2 hours in an 8-hour work day
9  with normal breaks; a need to walk around approximately every 15 minutes in an 8-hour work
10 day; a need for an unscheduled break of half an hour approximately every 20 minutes during an
11 8-hour work day; a need to shift positions at will; a need to lie down twice a day for 45 minutes
12 at a time; limitation to lifting less than 10 pounds occasionally and to twisting, stooping, or
13 crouching rarely; and a likelihood of missing more than four days of work per month.  (Tr. at
14 221-24.)  Dr. Budhram found plaintiff's impairments consistent with her symptoms and the
15 functional limitations described in his evaluation.  (Tr. at 220.)
16             The ALJ rejected Dr. Budhram's medical opinions on the ground that his treating
17 notes did not reflect objective medical findings which would limit the claimant to the degree
18 stated by Dr. Budhram.  (Tr. at 21.)  The ALJ conceded that "CT scans of the claimant's lumbar
19 and thoracic spine have been abnormal" but asserted that the scans "do not show abnormalities
20 which would prelude [sic] the claimant from being able to sit for more than 20 minutes total or
21 stand for less than 2 hours total with other limitations."  (Id.)  The ALJ commented that "EMG of
22 the claimant's lower extremities was normal and there is no medical evidence of record of
23 findings which would support Dr. Budhram's assessment of carpal tunnel syndrome."  (Id.)  The
24 ALJ suggested that Dr. Budhram must have been relying on the claimant's subjective complaints
25 when he completed the questionnaire.  (Id.)  The ALJ found plaintiff's subjective complaints not
26 credible and decided that Dr. Budhram's report was "inconsistent with the medical findings" as

well as plaintiff's own testimony about her ability to perform exertional activities. (Id.)  Giving more weight to the 2002 assessment of a non-treating physician, the ALJ found that plaintiff was capable of performing medium work although she should "avoid concentrated exposure to fumes, odors, dust, gases, etc." and should restrict herself to "jobs which do not require frequent public or peer contact."  (Tr. at 21-22.)

Plaintiff argues that the ALJ improperly rejected the medical opinions of Dr. Budhram based on an alleged lack of objective medical findings and then substituted his own opinion that the radiological abnormalities revealed by the CT scans did not support the limitations assessed by Dr. Budhram.  Plaintiff contends that the ALJ impermissibly relied on his own lay opinion, disregarded significant findings of radiological abnormalities, and ignored the fact that Dr. Budhram's opinions were consistent with those of Dr. Heard, a treating physician who saw plaintiff several times at the Shasta Community Health Clinic.

With regard to significant radiological abnormalities, plaintiff cites the impression of Thomas L. Atlas, M.D., who reviewed a CT scan ordered by Dr. Budhram in 2003:

> 1. L3-4 and L4-5:  3-4 mm circumferential disk bulges with mild central spinal canal stenosis.  There is additional dorsal osteophytic ridging at L3-4.
> 2. L2-3:  5 mm circumferential disk bulge with overall modest central spinal canal stenosis.
> 3. L2-3:  2 mm dorsal osteophytic ridge and broad-based disk bulge with mild thecal sac indentation.

(Tr. at 231-32.)  The CT scan of the lumbar spine was requested due to plaintiff's complaints of pain, and the examination took place on August 28, 2003.  (Tr. at 231.)

To refute the ALJ's determination that Dr. Budhram's report was "inconsistent with the medical findings," plaintiff points to the progress notes of L. Heard, M.D., dated December 12, 2001, concerning an earlier CT scan.  Plaintiff was seen several times at the Shasta Community Health Clinic in 2001.  (Tr. at 133-40.)  Dr. Heard's notes from December 12, 2001, reflect that the appointment was for follow up on a CT scan of the cervical spine and that plaintiff had a history of cervical spine pain as well as several months of tingling and numbness

7

affecting her left upper extremity. (Tr. at 136.) Dr. Heard's diagnosis was "C-spine pain" and "C5-6 desiccation disc with foramen stenosis." (Id.) The treatment plan was to "[t]ry Celebrex. If no better refer to UCD. Long term prognosis - ? poor." (Id.)

The court finds plaintiff's arguments persuasive. Dr. Budhram's opinions are consistent with his own previous medical findings, the medical findings of another treating physician, and objective medical evidence in the form of CT scans performed in 2001 and 2003. Dr. Budhram's opinions are not contradicted by the internal medicine consultative examination performed by Lloyd Johnson, M.D., in 2002. (Tr. at 163-69.) When Dr. Johnson examined plaintiff in September 2002, no medical records were available for his review. (Tr. at 163-64.) Dr. Johnson nevertheless found evidence of low back pain and concluded that plaintiff had some physical functional limitations as a result of her back pain. (Tr. at 167.) Without the benefit of plaintiff's medical records, Dr. Johnson reached the conclusion that plaintiff could lift and carry 50 pounds occasionally and 25 pounds frequently, could bend and crouch occasionally, could stand and walk up to 6 hours out of an 8-hour workday, and could sit for an unlimited period of time but might need to change positions in order to alleviate pain. (Id.) However, the significance of Dr. Johnson's 2002 opinion is diminished further by the objective medical evidence of the 2003 CT scan.

Nor does the record support the ALJ's contention that Dr. Budhram's report was inconsistent with plaintiff's own testimony about her ability to perform exertional activities. At the hearing, plaintiff testified that she was employed as a hotel maid for two months and as a telemarketer for one week. (Tr. at 281.) She left the hotel maid job because of pain and anxiety and she left the telemarketing job because of anxiety. (Tr. at 281-82.) At the time of the administrative hearing, plaintiff had been living in a motel room with her 12-year-old daughter for two years and was able to clean their room, prepare a meal each evening – presumably a simple meal due to the lack of a kitchen – and do grocery shopping about once a month. (Tr. at 282-83.) Plaintiff did not go to church, the movies, or out to eat, did not do volunteer work or

play sports, and did not belong to any organizations. (Tr. 283-84.) Plaintiff was taking medications for depression, anxiety, and pain, was using Albuterol as needed, and was taking anti-psychotic and mood stabilizing medication. (Tr. at 286-87.) Her worst pain was in her neck and upper and lower back, was constant, and, on a scale of one to ten, rated 8. (Tr. at 289-90.) She dealt with neck pain by taking her medications and sometimes by using heat, but she found that the medication merely took the edge off the pain, lowering the level of pain to 7. (Tr. at 289-90.) Plaintiff dealt with her back pain by changing positions. (Tr. at 291.) She experienced numbness and tingling in her hands and arms, such that it was sometimes hard for her to hold a pen to write with her right hand, and she dropped things a couple of times a week. (Id.) She could sit about half an hour before having to get up and could stand for about 15 to 20 minutes before having to move around. (Tr. at 292.) She needed to lie down and rest two to three times a day for about 15 minutes. (Id.)

Plaintiff's testimony is inconsistent with Dr. Budhram's opinions in only minor ways. In Dr. Budhram's opinion, plaintiff was unable to sit for more than 20 minutes at a time, while plaintiff thought she could sit for about half an hour. In the doctor's opinion, plaintiff could not stand more than ten minutes at a time, while plaintiff thought she could stand for about 15 to 20 minutes before having to move around. In the doctor's opinion, plaintiff would need to walk around approximately every 15 minutes in an 8-hour work day, while plaintiff thought she needed to lie down and rest two or three times a day for about 15 minutes. In the doctor's opinion, plaintiff would need to lie down twice a day for 45 minutes at a time, while plaintiff thought she needed to lie down two or three times a day for about 15 minutes. These differences are not material and do not constitute a reason, much less a clear and convincing reason, for rejecting the treating physician's opinions.

The ALJ did not state specific and legitimate reasons supported by substantial evidence in the record for not fully crediting Dr. Budhram's assessment of plaintiff's residual functional capacity. See Bayliss v. Barnhart, 427 F.3d 1211, 1216-17 (9th Cir. 2005); Batson v.

1  Comm'r, 359 F.3d 1190, 1195 (9th Cir. 2004); Lester, 81 F.3d at 830-31. Cf. Meanel v. Apfel,
2  172 F.3d 1111, 1113-14 (9th Cir. 1999) (rejecting a treating physician's conclusory, minimally
3  supported opinion); see also Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989). The final
4  decision of the Commissioner should be reversed on this ground.
5  II. Credibility of Plaintiff's Statements
6        It is well established that the determination of credibility is a function of the ALJ
7  acting on behalf of the Commissioner. Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996). An
8  ALJ's assessment of credibility should, in general, be given great weight. Nyman v. Heckler,
9  779 F.2d 528, 531 (9th Cir. 1985). Thus, questions of credibility and resolution of conflicts in
10 the testimony are usually deemed functions solely of the Commissioner. Morgan v. Comm'r of
11 Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999). In evaluating a claimant's subjective
12 testimony regarding pain and the severity of the claimant's symptoms, an ALJ may consider the
13 presence or absence of supporting objective medical evidence, along with other factors. Bunnell
14 v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991) (en banc). See also Smolen, 80 F.3d at 1285.
15 Ordinary techniques of credibility evaluation may be employed, and the adjudicator may take
16 into account prior inconsistent statements or a lack of candor by the witness. Fair v. Bowen, 885
17 F.2d 597, 604 n.5 (9th Cir. 1989).
18       Nonetheless, an ALJ's decision to reject a claimant's subjective testimony
19 regarding the severity of his symptoms must be supported by specific findings. Morgan, 169
20 F.3d at 599; Matthews v. Shalala, 10 F.3d 678, 679 (9th Cir. 1993) (citing Miller v. Heckler, 770
21 F.2d 845, 848 (9th Cir. 1985)). "Without affirmative evidence showing that the claimant is
22 malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear
23 and convincing." Morgan, 169 F.3d at 599.
24       Once a claimant has presented medical evidence of an underlying impairment, the
25 ALJ may not discredit the claimant's testimony as to the severity of symptoms merely because
26 the symptoms are unsupported by objective medical evidence. Reddick v. Chater, 157 F.3d 715,

1  722 (9th Cir. 1998); Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997).  Rather, "'the
2  ALJ can reject the claimant's testimony about the severity of [his] symptoms only by offering
3  specific, clear and convincing reasons for doing so.'"  Light, 119 F.3d at 792 (quoting Smolen,
4  80 F.3d at 1281).  See also Reddick, 157 F.3d at 722.  Although the ALJ may rely, in part, on his
5  or her own observations, see Han v. Bowen, 882 F.2d 1453, 1458 (9th Cir. 1989), the ALJ cannot
6  substitute such observations for medical diagnosis, Marcia v. Sullivan, 900 F.2d 172, 177 n.6
7  (9th Cir. 1990).

8         Here, the ALJ conceded that "if the undersigned was to find the testimony of the
9  claimant to be credible, a finding of disability would be directed."  (Tr. at 20.)  However, the ALJ
10 rejected plaintiff's testimony on the grounds that (1) her subjective complaints, standing alone,
11 do not provide a basis to find disability, (2) the objective medical evidence does not support the
12 degree of pain, side effects from medications, and limitations due to depression and anxiety
13 alleged by plaintiff, and (3) plaintiff appeared to be "exaggerating the degree of her limitations
14 and pain for secondary gain."  (Id.)

15        As discussed supra, the objective medical evidence demonstrates that plaintiff
16 suffers from conditions that might reasonably be expected to cause symptoms of pain and
17 limitations on her ability to walk, stand, and perform basic work functions.  The ALJ should not
18 have rejected plaintiff's subjective testimony regarding the severity of her symptoms without
19 making specific findings.  Morgan, 169 F.3d at 599; Matthews v. Shalala, 10 F.3d 678, 679 (9th
20 Cir. 1993) (citing Miller v. Heckler, 770 F.2d 845, 848 (9th Cir. 1985)).  In addition, the ALJ's
21 speculation about exaggeration for purposes of secondary gain does not constitute "affirmative
22 evidence showing that the claimant is malingering." and therefore the reasons for rejecting
23 plaintiff's testimony must be clear and convincing.  Morgan, 169 F.3d at 599.  The ALJ's stated
24 reasons for rejecting plaintiff's testimony are not clear and convincing, and the final decision of
25 the Commissioner should be reversed on this ground as well.
26 /////

**CONCLUSION**

In light of the errors identified above, it is unnecessary to address plaintiff's argument that the ALJ improperly found her not disabled by comparing her vocational factors to those of the grids.  The ALJ has admitted that, if plaintiff's testimony is found to be credible, a finding of disability would be directed.

The decision whether to remand a case for additional evidence or to simply award benefits is within the discretion of the court.  Ghokassian v. Shalala, 41 F.3d 1300, 1304 (9th Cir. 1994); Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir. 1990).  In this regard, the Ninth Circuit has stated that, "[g]enerally, we direct the award of benefits in cases where no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed."  Ghokassian, 41 F.3d at 1304 (citing Varney v. Sec'y of Health & Human Servs., 859 F.2d 1396, 1399 (9th Cir. 1988)).  This rule recognizes the importance of expediting disability claims.  Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001); Ghokassian, 41 F.3d at 1304; Varney, 859 F.2d at 1401.  Where, as here, there were no legitimate reasons given for failing to credit the examining physician's opinions or plaintiff's testimony, there is no need to remand the case for additional findings.  See Moisa, 367 F.3d at 887 (remanding for award of benefits where the ALJ erroneously rejected plaintiff's subjective pain testimony); Moore v. Comm'r of Soc. Security Admin., 278 F.3d 920, 925 (9th Cir. 2002) (remanding for payment of benefits where the ALJ "improperly rejected testimony [plaintiff's] three examining physicians"); Holohan, 246 F.3d at 1211; Ghokassian, 41 F.3d at 1304 (awarding benefits where the ALJ "improperly discounted the opinion of the treating physician"); Pitzer, 908 F.2d at 506; Winans v. Bowen, 853 F.2d 642, 647 (9th Cir. 1987).

If the opinion of plaintiff's examining physician and plaintiff's own testimony are properly credited, the evidence indicates that plaintiff is disabled.  Further, any work she might be able to perform would not amount to substantial gainful activity since it would be intermittent, irregular and subject to frequent interruptions.  See Rodriguez v. Bowen, 876 F.2d 759, 763 (9th

Cir. 1989); Kornock v. Harris, 648 F.2d 525, 527 (9th Cir. 1980). Plaintiff filed her disability application five years ago, and no useful purpose would be served by delaying this matter further for additional administrative proceedings. Therefore, this matter should be remanded with the direction to grant benefits.

In accordance with the above, IT IS HEREBY RECOMMENDED that:

1. Plaintiff's motion for summary judgment be granted;

2. Defendant's cross-motion for summary judgment be denied;

3. The decision of the Commissioner of Social Security be reversed and this case is remanded with the direction to grant benefits.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within ten days after being served with these findings and recommendations, any party may file written objections with the court and shall serve a copy of the objections on all other parties. A document containing objections should be titled "Objections to Magistrate Judge's Findings and Recommendations." Any reply to objections shall be filed and served within ten days after the objections are served. The parties are advised that failure to file objections within the specified time may, under certain circumstances, waive the right to appeal the District Court's order. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: August 13, 2007.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:kw
Ddad1/orders.socsec/vaughn1400.f&r